UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NICHOLAS P. MUNT-LOVELL, <br><br> Plaintiff, <br><br> v. <br><br> ROUNDPOINT MORTGAGE SERVICING CORP., et al., <br><br> Defendants. | CASE NO. 2:25-cv-01365-TL <br><br> ORDER ON MOTION FOR PRELIMINARY INJUNCTION |

This matter is before the Court on Plaintiff's Motion for Preliminary Injunction. Dkt. No. 16. Having considered Plaintiff's motion, Defendants Trans Union LLC ("Defendant Trans Union"), Equifax Information Services LLC ("Defendant Equifax"), and Experian Information Solutions, Inc. ("Defendant Experian") (collectively, the "Consumer Reporting Agency ('CRA') Defendants'") response (Dkt. No. 35), Defendant RoundPoint Mortgage Servicing Corporation's ("Defendant RoundPoint") response (Dkt. No. 44), Plaintiff's replies (Dkt. Nos. 41, 46) the relevant record, and having ruled on Defendant RoundPoint's Motion to Dismiss (Dkt. No. 61), the Court DENIES Plaintiff's motion.

ORDER ON MOTION FOR PRELIMINARY INJUNCTION – 1

## I.    BACKGROUND

This action arises from Defendant RoundPoint's allegedly false reporting of delinquency related to Plaintiff's mortgage. *See generally* Dkt. No. 6 (Complaint). The Court assumes familiarity with the facts of this case. *See generally id.*; Dkt. No. 14 (Order on Motion for Temporary Restraining Order); Dkt. No. 61 (Order on Motion to Dismiss).

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 65(a) authorizes district courts to issue preliminary injunctions. Preliminary injunctive relief is an extraordinary remedy that is "never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).

To obtain a preliminary injunction, a plaintiff must establish that (1) it is likely to prevail on the merits of its substantive claims, (2) it is likely to suffer imminent, irreparable harm absent an injunction, (3) the balance of equities favors an injunction, and (4) an injunction is in the public interest. *Id.* at 20. Ninth Circuit courts evaluate these factors on a "sliding scale"—that is, "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and the injunction is in the public interest." *Arc of Cal. v. Douglas*, 757 F.3d 975, 983 (9th Cir. 2014) (internal citations and quotation marks omitted).

## III.    DISCUSSION

As a preliminary matter, on January 26, 2026, the Court ordered the dismissal of all but one of Plaintiff's claims against Defendant RoundPoint—the alleged violation of the Fair Credit and Reporting Act ("FCRA") related to Defendant's conduct involving claimed delinquencies between September 2022 and February 2023 claimed in Count I. Dkt. No. 61. The CRA Defendants did not file a motion to dismiss Plaintiff's complaint, but the reasoning for the dismissal of Counts II, IV, V, and VI as to Defendant RoundPoint demonstrates why those

claims are also not likely to succeed on the merits against the CRA Defendants. However, Count III against CRA Defendants remains undisturbed. Therefore, the Court decides the current motion based solely on Count I against Defendant RoundPoint[1] and Count III against the CRA Defendants.

Additionally, Plaintiff makes several requests in his Motion for a Preliminary Injunction: (1) "Remove the June 2025 120-day late payment notation from Plaintiff's credit reports"; (2) "Cease reporting any further late payments or derogatory information on Plaintiff's mortgage account while this litigation is pending"; (3) "Restore the full tradeline history for Plaintiff's mortgage account to Experian and TransUnion"; and (4) "Suspend all foreclosure activity on Plaintiff's property until final judgment in this case." Dkt. No. 16 at 2.

The first and fourth requests are moot. The first is moot because it refers to a now-dismissed portion of Plaintiff's claim in Count I. *See* Dkt. No. 61 at 10. The fourth is moot because Defendant RoundPoint asserts that, "following conversations with Plaintiff, RoundPoint agreed to temporarily pause foreclosure proceedings on Plaintiff's property during the pendency of this matter." Dkt. No. 44 at 15. Plaintiff admits that such a "foreclosure pause" exists. Dkt. No. 46 at 7.

**A.    Injunctive Relief Under the Fair Credit and Reporting Act**

In their response, the CRA Defendants argue that a private plaintiff cannot seek injunctive relief under the FCRA. Dkt. No. 35 at 2. The Fifth Circuit has held that private litigants cannot obtain injunctive relief under the FCRA. *See Washington v. CSC Credit Servs. Inc.*, 199 F.3d 263, 268 (5th Cir. 2000) ("We hold that the affirmative grant of power to the FTC

---

[1] Count I alleges a violation of 15 U.S.C. § 1681s-2(b) against all Defendants. However, Section 1681s-2 is titled "Responsibilities of furnishers of information to consumer reporting agencies" and applies only to Defendant RoundPoint, and not the CRA Defendants, in this case.

to pursue injunctive relief, coupled with the absence of a similar grant to private litigants when they are expressly granted the right to obtain damages and other relief, persuasively demonstrates that Congress vested the power to obtain injunctive relief solely with the FTC."). However, district courts in the Ninth Circuit have disagreed about whether to adopt the Fifth Circuit's holding in *Washington. Compare Contrast Quadrant Info. Servs., LLC v. LexisNexis Risk Solutions, Inc.*, No. C11-6648, 2012 WL 3155559 at *3 (N.D. Cal. Aug. 2, 2012) ("Although private litigants may maintain a claim for damages under the FCRA, only the [FTC] is empowered by statute to seek equitable relief."), *with Engelbrecht v. Experian Info. Servs., Inc.*, No. C12-1547, 2012 WL 10424896 at *3–5 (C.D. Cal. Nov. 6, 2012) (opining that "if the FTC lacked the resources to pursue injunctive relief for each consumer whose credit report was inaccurate, a consumer without the right to bring a claim for injunctive relief would be helpless to correct [their] credit information"). In any event, Plaintiff's motion fails the Court's *Winter* analysis, so the Court will not reach the question of whether a private litigant can obtain injunctive relief under the FCRA.

## B.    Mandatory Injunction

Defendant RoundPoint argues that in the present motion, Plaintiff seeks a mandatory injunction. Dkt. No. 44 at 9. Relief is considered a mandatory injunction when it "orders a responsible party to take action." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (quoting *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.,* 571 F.3d 873, 879 (9th Cir. 2009)) (internal quotation marks omitted). A mandatory injunction "goes well beyond simply maintaining the status quo *pendente lite* [and] is particularly disfavored." *Stanley v. Univ. of S. Cal.,* 13 F.3d 1313, 1320 (9th Cir.1994) (citation omitted). When requesting a mandatory injunction, a plaintiff "must establish that the law and facts *clearly favor* [their] position, not

simply that [they are] likely to succeed." *LA All. for Hum. Rts. v. Cnty. of Los Angeles*, 14 F.4th 947, 956 (9th Cir. 2021) (citation omitted).

Because one of Plaintiff's remaining requests—that Defendant RoundPoint "[c]ease reporting any further late payments or derogatory information on Plaintiff's mortgage account while this litigation is pending" (Dkt. No. 16 at 2)—requires Defendant RoundPoint to take action, the Court finds that Plaintiff seeks a mandatory injunction. Plaintiff does not reply to Defendant RoundPoint's argument that this should be considered a request for a mandatory injunction (*see generally* Dkt. No. 46) so, therefore, the Court treats it as an admission. *See Bds. of Trs. of the Cement Masons & Plasterers Health & Welfare Tr. v. Concreteman, Inc.*, No. C13-1698, 2014 WL 1884496, at *3 (W.D. Wash. May 12, 2014) ("Failure to respond to an argument may be treated as an admission that the argument has merit.")); *see also* LCR 7(b)(2).

Regardless, even if the Court does not apply the heightened standard of mandatory injunction here, Plaintiff does not prove that he is likely to succeed on the merits of his claim.

**C.    *Winter* Factors**

**1.    Likelihood of Success on the Merits**

**a.    Count I Against Defendant RoundPoint**

As explained, Plaintiff currently has only one remaining claim that all Defendants violated the FCRA 15 U.S.C. § 1681s-2(b), for inaccurate delinquency reporting for the period between September 2022 and February 2023. Dkt. No. 6 ¶¶ 21–23. To bring a claim under section 1681s-2(b), Plaintiff must show that "[(1)] Defendant is a 'furnisher'; (2) Plaintiff notified the CRA that Plaintiff disputed the reporting as inaccurate; (3) the CRA notified the furnisher of the alleged inaccurate information of the dispute; (4) the reporting was in fact inaccurate; and (5) Defendant failed to conduct [a reasonable] investigation required by § 1681s-2(b)(1)." *Stinnett v. Navy Fed. Credit Union*, No. C24-8964, 2025 WL 1199443, at *3 (C.D. Cal.

Jan. 28, 2025) (citation omitted)); *see also Silver v. Capital One, N.A.*, No. C25-5175, 2025 WL 2689027, at *2 (W.D. Wash. Sept. 19, 2025).

As an initial matter, although Plaintiff brings the claim against "All Defendants," his claims of inaccurate reporting are only properly lodged against Defendant RoundPoint, not the CRA Defendants because the CRA Defendants are not furnishers. *See supra* n.1. Therefore, the Court only addresses Defendant RoundPoint in its analysis.

### (1)      Defendant RoundPoint is a Furnisher

Defendant RoundPoint concedes that it is a mortgage loan furnisher, so the first element is not contested. Dkt. No. 44 at 11.

### (2)      Plaintiff Did Not Request the CRA Defendants to Notify Defendant RoundPoint

In support of the second and third elements, Plaintiff outlines in the motion and in a declaration (Dkt. No. 18) a complaint to the Consumer Financial Protection Bureau ("CFPB"), as well as his efforts to directly notify Defendant RoundPoint about the alleged inaccuracies it sent to CRAs. Dkt. No. 16 at 2–3; *see generally* Dkt. No. 18. But in neither Plaintiff's complaint nor his motion and subsequent briefing does he assert that he went to the CRA Defendants to request they contact Defendant RoundPoint to make corrections to the inaccurate reporting. *See generally* Dkt. Nos. 6, 16, 46. Further, Plaintiff provides copies of letters sent to him from Defendant RoundPoint which show Defendant RoundPoint's acknowledging that Plaintiff submitted a complaint to the CFPB. Dkt. Nos. 18 at 23–26. Finally, it is not until one conclusory sentence in Plaintiff's reply to Defendant RoundPoint that he asserts, without any factual support to point to, that the CRA Defendants notified Defendant RoundPoint. Dkt. No. 46 at 2. However, this assertion is contrary to the rest of Plaintiff's briefing. Throughout Plaintiff's recitation of the alleged facts and his arguments, Plaintiff asserts that he contacted the CFPB and Defendant

RoundPoint directly (*see generally* Dkt. Nos. 16, 18), and that he contacted the CRA Defendants with proof that Defendant RoundPoint admitted to the inaccurate reporting (*see id.; see also generally* Dkt. No. 41)—a claim that is contrary to the CRA Defendants being the ones to notify Defendant RoundPoint.

Plaintiff fails to show that he brought the claim of inaccurate reporting directly to the CRA Defendants, which he needed to do because the duty for Defendant RoundPoint to investigate only arises after notice from a plaintiff to a CRA, and then from CRA to the furnisher. *See Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1154 (9th Cir. 2009); *see also Silver*, 2025 WL 2689027, at *2 ("Concerning the second element, it is well-established that proof of 'a formal notice of consumer dispute from a [CRA]' is required to prove a furnisher's FCRA violation." (citation omitted)). Therefore, Plaintiff fails to establish the second and third elements of the claim.

### (3)    Plaintiff Establishes the Reporting was Inaccurate

As to the fourth element, Plaintiff also uses the letters from Defendant RoundPoint as evidence to support this element. Relevant to Defendant RoundPoint's delinquency reporting between September 2022 and February 2023 is a letter dated December 3, 2024. Dkt. No. 18 at 23. The letter states:

> A comprehensive review of our records has been conducted to address the concerns thoroughly. Upon examination, our records indicate the account entered a COVID-related accommodation in October of 2020 in a current status. The accommodation ended in September 2022 and following the accommodation end date, the loan was inadvertently reported with the actual delinquent status during the November and December 2022 reporting cycles. In consideration of the guidelines regarding post CARES Act accommodation credit reporting, we have removed the credit reported for the November and December 2022 reporting cycles. Please allow four to six weeks for these updates to reflect on your credit report.

*Id*. In a subsequent letter dated June 30, 2025, Defendant RoundPoint states, "Additionally, we provided a response to you dated December 3, 2024 which indicated that we submitted a request to the credit reporting agencies to remove the information reported for the November and December 2022 reporting cycles." *Id*. at 25. Although all Defendants assert that Plaintiff makes claims without support (Dkt. No. 35 at 3; Dkt. No. 44 at 10), the letter proves the opposite. Plaintiff has established the fourth element.

### (4)    Defendant RoundPoint Conducted a Reasonable Investigation

The fifth element relates to whether "Defendant[s] failed to conduct [a reasonable] investigation required by § 1681s-2(b)(1)." *Stinnett*, 2025 WL 1199443, at *3. 15 U.S.C. § 1681s-2(b)(1) provides that after receiving notice of a dispute, the furnisher shall:

> (A) conduct an investigation with respect to the disputed information; (B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title; (C) report the results of the investigation to the consumer reporting agency; (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly--(i) modify that item of information; (ii) delete that item of information; or (iii) permanently block the reporting of that item of information.

Notably, Plaintiff does not assert that Defendant RoundPoint never investigated Plaintiff's claims of inaccurate delinquency reporting between September 2022 and February 2023. *See generally* Dkt. Nos. 16, 18. Instead, Plaintiff argues that Defendant RoundPoint admitted the errors and said they would correct them, but that "no full corrections were made." Dkt. No. 16 at 3. In fact, in the letter from Defendant RoundPoint that Plaintiff submits, Defendant RoundPoint explicitly

states that it did investigate the claims. Dkt. No. 18 at 23 (stating, "A comprehensive review of our records has been conducted to address the concerns thoroughly."). Defendant RoundPoint's letters further state that it has removed the erroneous credit reports (*id.*) and submitted a request to the credit reporting agencies to remove the information (*id.* at 25). Regardless, the duty to investigate under Section 1681s-2(b)(1) only arises "after the furnisher receives notice of dispute *from a CRA*; notice of a dispute received directly from the consumer does not trigger furnishers' duties under [§ 1681s-2(b)]." *Gorman*, 584 F.3d at 1154 (emphasis added). Plaintiff fails to establish the fifth element.

*    *    *

Therefore, because Plaintiff fails to establish the second, third, and fifth elements of a Section 1681s-2(b) claim, the Court cannot conclude that, based upon the evidence currently before the Court,[2] he is likely to succeed on the merits of Count I as against Defendant RoundPoint.

### b.    Count III Against CRA Defendants

In Count III, Plaintiff claims that the CRA Defendants violated 15 U.S.C. § 1681e(b) (Dkt. No. 6 ¶¶ 26, 27), which states, "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). To sustain a claim under Section 1681e(b), "the consumer must make a 'prima facie showing' of inaccuracy in the agency's reporting." *Gross v. CitiMortgage, Inc.*, 33 F.4th 1246, 1251 (9th Cir. 2022) (citation modified). If a plaintiff can show that there is an inaccuracy, it "must establish

---

[2] Furthermore, the question of whether Plaintiff brought his remaining claim within the statute of limitations remains open. Defendant RoundPoint solely relied on a statute-of-limitations argument for the alleged delinquency between September 2022 and February 2023, instead of also providing evidence showing that it notified Plaintiff he was delinquent during the aforementioned period. *See* Dkt. No. 43 at 8.

that the investigation was unreasonable." *Id.* Information is considered inaccurate under the FCRA "because it is patently incorrect, or because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Gorman*, 584 F.3d at 1163 (citation modified). A plaintiff must also show that his injury "was caused by the inclusion of the inaccurate entry.'" *Oatway v. Experian Info. Sols. Inc.,* No. C24-523, 2025 WL 2689029, at *12 (W.D. Wash. Sept. 19, 2025) (citation modified). When a plaintiff complains of a willful violation, the plaintiff must also show "that the defendant acted knowingly or with reckless disregard of the statute's terms." *Id.*

Based upon the information currently before the Court, Plaintiff cannot demonstrate a likelihood of success on the merits. Both Plaintiff's motion and the declaration attached to his motion are silent as to whether he even contacted the CRA Defendants about the alleged inaccuracies from Defendant RoundPoint. *See generally* Dkt. Nos. 16, 18. It is not until Plaintiff's declaration in support of his brief replying to the CRA Defendants' opposition to Plaintiff's motion, that Plaintiff mentions efforts to contact the CRA Defendants. But the Court "need not consider arguments raised for the first time in a reply brief." *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007).[3]

Even if the Court were to consider the new arguments raised in Plaintiff's reply, Plaintiff's motion would fail. Plaintiff asserts that, regarding the allegedly inaccurate reporting from 2022, Defendant TransUnion and Defendant Experian "failed to conduct a reasonable investigation," because the Defendants "mechanically repeatedly defer[ed] to RoundPoint without independently assessing the obvious inconsistencies in the account history." Dkt. No. 41

---

[3] Moving forward, Plaintiff is cautioned that he must make all arguments that should be made in an initial motion, in the initial motion. "New arguments may not be introduced in a reply brief." *United States v. Puerta*, 982 F.2d 1297, 1300 n.1 (9th Cir. 1992). Reply briefs shall be limited to addressing arguments raised in the response brief.

at 8. First, Plaintiff does not provide any facts supporting his bare-bones allegation. To the contrary, Plaintiff concedes that after notifying Defendant TransUnion and Defendant Experian of the inaccuracies, both CRAs fixed the reporting, albeit not as timely as Plaintiff would have liked. *See id.* at 8. Second, the inconsistencies were not, in fact, "obvious," as evidenced by the significant dispute shown through documentation, which the Court considered in its Order on Motion to Dismiss. *See* Dkt. No. 61 at 6. Finally, Plaintiff's underlying complaint makes a claim that the CRA Defendants were "willful or negligent" by not following their duty under Section 1681e(b). Dkt. No. 6 ¶ 27. But except for this single sentence that merely parrots the statute, and a single mention that Plaintiff disputed the inaccuracies in reporting with the CRA Defendants (*id.* ¶ 12), Plaintiff otherwise fails to provide any supporting facts in his complaint to support his allegation. In the end, all Plaintiff provides is a conclusory statement in his reply brief that the CRA Defendants must not have done their due diligence because they trusted Defendant RoundPoint. *See* Dkt. No. 41 at 7–8. This is insufficient to demonstrate likelihood of success on the merits.

Furthermore, when Plaintiff claims that the CRA Defendants relied on "obvious inconsistencies" when they "mechanically" deferred to Defendant RoundPoint (*id.* at 8), he relies on Ninth Circuit case law that is not analogous to the present matter.[4] Plaintiff claims "[t]he Ninth Circuit has similarly emphasized that CRAs must go beyond superficial verification where obvious errors exist" (*id.* at 6), which is an inaccurate recitation of both cases he cites. First, Plaintiff cites to *Drew v. Equifax Information Services, LLC*, 690 F.3d 1100 (9th Cir. 2012). In *Drew*, the Ninth Circuit noted that in *Gorman*, it had held that despite the CRA providing the furnisher with "scant" information to carry out an investigation, "the furnisher's inaccurate

_____

[4] Plaintiff also relies on a Third Circuit case, *Cushman v. TransUnion Corp.*, 115 F.3d 220, 225 (3d Cir. 1997), which is not binding on this Court.

ORDER ON MOTION FOR PRELIMINARY INJUNCTION – 11

reporting after an investigation was not dispositive proof that its investigation was unreasonable, as despite reasonable efforts, it may not have been given sufficient information to reach the correct conclusion despite reasonable efforts." *Drew*, 690 F.3d at 1110 (discussing *Gorman*, 584 F.3d at 1155–57). The court went on to say "[a]n investigation is not necessarily unreasonable because it results in a substantive conclusion unfavorable to the consumer, even if that conclusion turns out to be inaccurate." *Id*. (citation modified). Next, Plaintiff cites to *Dennis v. BEH-1, LLC*, 520 F.3d 1066 (9th Cir. 2008). Dkt. No. 41 at 6. In *Dennis*, the Ninth Circuit held that the consumer reporting agency defendant "negligently failed to conduct a reasonable *reinvestigation* in violation of section 1681i." *Dennis*, 520 F.3d at 1071 (emphasis added). Notably, the court reached that holding in a summary judgment order, which, naturally, included a much larger factual record than what is before this Court, including facts about the service the defendant commissioned to run the reinvestigation. *See id*. at 1068. The Court also stated "[a]t trial *on the section 1681e(b) claim*, Experian remains free to argue . . . that it should be exonerated because it followed 'reasonable procedures to assure maximum possible accuracy.'" *Id*. at 1069–70 (emphasis added). *Drew* says the opposite of what Plaintiff asserts (*see* 690 F.3d at 1110) and *Dennis* refers to a scenario where the unreasonable investigation refers to a statute under which Plaintiff has not brought a claim. *See* 520 F.3d at 1071 (referring to reinvestigations after complaints by a consumer have been raised). As such, these cases do not apply in the way Plaintiff asserts.

Ultimately, while Plaintiff may be able to provide more information on the CRA Defendants' investigation at a future date, after discovery, Plaintiff currently does not provide any facts as to the investigation process of Defendant TransUnion and Defendant Experian, other than assuming, without support, that they "parrot[ed]" Defendant RoundPoint. Dkt. No. 41 at 7.

Without more, the Court cannot conclude that Plaintiff is likely to succeed on the merits of his claim against Defendant TransUnion and Defendant Experian.

Lastly, Plaintiff claims that Defendant Equifax violated Section 1681e(b) by its mishandling of the June 2025 alleged inaccuracy. However, as Plaintiff's claim as to the June 2025 inaccuracy has been dismissed (*see* Dkt. No. 61 at 15), the Court need not reach this claim.

Therefore, the Court cannot conclude that Plaintiff is likely to succeed on the merits against the CRA Defendants in Count III.

### 2. Remaining *Winter* Factors

Because Plaintiff has not shown likelihood of success on the merits, the Court will not address the remaining *Winter* factors. *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (holding that because the "first [*Winter*] factor is a threshold inquiry and is the most important factor," a court "need not consider the other factors if a movant fails to show a likelihood of success on the merits") (citation modified).

### IV.    CONCLUSION

Accordingly, Plaintiff's Motion for Preliminary Injunction (Dkt. No. 16) is DENIED. It is hereby ORDERED:

(1)    Plaintiff's request that the Court order All Defendants to "Cease reporting any further late payments or derogatory information on Plaintiff's mortgage account while this litigation is pending" (Dkt. No. 16 at 2) is DENIED.

//

//

//

//

//

(2)     Plaintiff's request that the Court order All Defendants to "Restore the full tradeline history for Plaintiff's mortgage account to Experian and TransUnion" (*id.*) is DENIED.

Dated this 4th day of February, 2026.

_____
Tana Lin
United States District Judge

ORDER ON MOTION FOR PRELIMINARY INJUNCTION – 14